OPINION
Defendant-appellant Aaron Hacker appeals from his conviction and sentence for two counts of Aggravated Vehicular Homicide. Hacker contends that the trial court erred by denying his motion to withdraw his guilty plea, and that the trial court erred by imposing consecutive sentences. We conclude that even if Hacker's motion to withdraw his plea, which was filed after his original sentence had been reversed, and before he had been re-sentenced, is deemed to be governed by the more liberal standard applying to pre-sentence motions to withdraw a plea, the trial court was within its discretion in denying that motion. However, we conclude that the findings necessary for the imposition of consecutive sentences are not supported by this record. Accordingly, the judgment of the trial court is Modified by making the sentences imposed run concurrently, rather than consecutively, and, as modified, the judgment of the trial court, including, without limitation, the lifetime termination of Hacker's driver's license, is Affirmed.
 I
The facts do not appear to be in dispute. One evening in April, 2000, Hacker, who was then twenty-one years old, was told about a party going on in Fairborn. Hacker ascertained that after the party he could stay at a friend's house, about a block away from the party, so he wouldn't have to drive home from the party. This was confirmed by the friend, according to the pre-sentence investigation report. Hacker got to the party at about midnight. Hacker drank beer continuously until about 5:00 or 6:00 in the morning, having consumed twelve to fifteen beers in that time. Hacker accepted, and used, some pills that people at the party were using to stay awake.
Hacker, a friend, and his friend's girlfriend left the party between 6:30 and 7:00 in the morning, and went to the girlfriend's house where they kept drinking and taking pills, while watching movies. At about 11:00 a.m., they went to a Lone Star Steak House, where Hacker had at least five alcoholic beverages at the bar. The last thing Hacker remembered before blacking out, was paying the bill with his credit card.
After the three left the Lone Star Steak House, they drove to the girlfriend's house. Hacker's friend and the friend's girlfriend were not able to stay there, so they put Hacker, who was then unconscious, in the back seat of his car.
When Hacker woke up in his car, in the middle of the day, he proceeded to drive away. While rounding a curve with a posted speed limit of 35 m.p.h., traveling in excess of 60 m.p.h., Hacker lost control of his vehicle, and collided with a parked car. Inside the parked car were Kenneth Jones, 63 years old, and Glenn Wade, 66 years old. Both men were severely injured as the result of the collision. Wade died two weeks after the collision, and it appears that Jones died several days later. The autopsy report indicates that the cause of death for Wade was "complications of blunt force trauma, with severe arteriosclerotic cardiovascular disease contributing." The autopsy report for Jones reports his cause of death as "complications of blunt force trauma, with atherosclerotic cardiovascular disease contributing."
Following the collision, Hacker's blood alcohol concentration tested at 0.24%, more than double the legal limit.
Hacker was the subject of a six-count indictment, based on the deaths of Jones and Wade. As the result of a plea bargain, Hacker pled guilty to two counts of Aggravated Vehicular Homicide, one count corresponding to each victim, the other counts were dismissed, and the State agreed to express no opinion with respect to sentencing. Following a hearing, the trial court imposed two consecutive seven-year sentences for the offenses. Hacker appealed, challenging the imposition of consecutive sentences. We reversed, concluding that the trial court had not set forth an adequate explanation of its reasons for imposing consecutive sentences. State v. Hacker (August 24, 2001), Clark App. No. 2001-CA-12, 2001-Ohio-1481.
After we reversed the judgment of the trial court, and remanded this case for re-sentencing, and before re-sentencing took place, Hacker moved to withdraw his plea of guilty. The trial court conducted a hearing on Hacker's motion. Following the hearing, the trial court denied his motion, and proceeded with a sentencing hearing. Following the sentencing hearing, the trial court again imposed two consecutive seven-year sentences. From his conviction and sentence, Hacker appeals.
 I
Hacker's First and Second Assignments of Error, are as follows:
 "THE LOWER COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA THE SAME BEING TIMELY FILED BEFORE SENTENCING."
 "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA, POST SENTENCE."
The parties disagree about whether Hacker's motion to withdraw his plea should be treated as a pre-sentence motion, which, pursuant to State v.Xie (1992), 62 Ohio St.3d 521, should be freely and liberally granted, or a post-sentence motion, which, pursuant to Crim.R. 32.1, is to be granted only "to correct manifest injustice." The trial court made it clear in its disposition of the motion that it would deny the motion under either standard.
We find it unnecessary to determine whether Hacker's motion should be regarded as having been filed before or after sentencing, because, in our view, even if the more liberal standard applying to pre-sentence motions is applied, the trial court was within its discretion in denying the motion.
Although State v. Xie, supra, indicates that a motion to withdraw a guilty plea made prior to sentencing should be freely and liberally granted, that same opinion holds that the decision whether to grant a motion to withdraw a guilty plea is confided to the discretion of the trial court, even in the case of a motion made before sentencing. A mere change of heart is insufficient justification for the withdrawal of aguilty plea, even when the motion to withdraw is made before sentencing.State v. Lambros (1988), 44 Ohio App.3d 102, at 103; State v. Mooty
(August 31, 2001), Greene App. No. 2000-CA-72, 2001-Ohio-1464.
In the case before us, Hacker argues that his motion to withdraw his guilty plea was predicated not merely upon a change of heart, but upon his discovery that he might have a defense to the charges, based upon a failure of proof that his conduct in driving while under the influence of alcohol proximately caused the deaths of Jones and Wade. In our view, Hacker failed to demonstrate any significant possibility of a meritorious defense to the charges to which he had pled guilty. At the hearing on his motion to withdraw his plea, Hacker admitted, in cross-examination, the fact "that one cause of both these individuals' death was the car crash, even if there were other causes that might be out there." R.C.2903.06, which proscribes the offense of Aggravated Vehicular Homicide provides as follows:
 "No person, while operating or participating in the operation of a motor vehicle, . . ., shall recklessly cause the death of another. . . ."
Hacker has cited no authority, and we are aware of none, for the proposition that the reckless conduct of a defendant under this statute must be the exclusive cause of death.
As the State pointed out, the fact that each decedent's pre-existing cardiovascular condition was a contributing factor in his death was noted in the prosecutor's recitation of the facts at the time Hacker originally tendered his plea.
In our view, Hacker has failed to establish the existence of any reasonable basis for withdrawing his plea, other than a change of heart, undoubtedly brought upon by the demonstrated propensity of the trial judge to impose consecutive, lengthy sentences. Thus, even under the liberal standard applicable to a pre-sentence motion to withdraw a plea of guilty, we conclude that the trial court did not abuse its discretion by denying Hacker's motion. Hacker's First and Second Assignments of Error are overruled.
 III
Hacker's Third Assignment of Error is as follows:
 "THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES UNDER R.C. 2929.14[E], THE SAME NOT BEING SUPPORTED BY THE RECORD."
As the State notes, on appeal from the imposition of consecutive sentences, an appellate court may increase, reduce, or otherwise modify a sentence imposed "if it clearly and convincingly finds . . . [t]hat the record does not support the sentencing court's findings under . . . division (E)(4) of section 2929.14." R.C. 2953.08(G). Before the enactment of R.C. 2953.08 as part of Senate Bill 2 in 1996, the standard of appellate review of a sentence imposed within statutory limits was abuse of discretion. R.C. 2953.08(G)(2) specifically provides that: "The appellate court's standard for review is not whether the sentencing court abused its discretion." Thus, the abuse of discretion standard of appellate review for sentencing has been replaced by a standard of review that is less deferential to the trial court. Nevertheless, the requirement that the appellate court "clearly and convincingly" find that the record does not support the sentencing court's findings, suggests that a trial court's sentencing findings are entitled to deference, but not the same extent of deference that prevailed under the abuse of discretion standard of review.
R.C. 2929.14(E)(4) lays out the findings that are required for the imposition of consecutive sentences. The first required finding is "that the consecutive services necessary to protect the public from future crime or to punish the offender." A second finding that is also required is that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender posed to the public." Finally, the trial court must make one of the following findings:
 "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
Finding (a), quoted above, is clearly not applicable to this case.
The trial court made both of the findings quoted in (b) and (c), above. In our view, the crucial issue in this case is whether the record supports either of those findings. Although the issue is close, we find, clearly and convincingly, that the record does not.
With respect to finding (b), the trial court observed that "the victims each suffered the worst form of physical injury or harm that could be inflicted on them." Presumably, this refers to the fact that the victims died as the result of their injuries. That the victims died is, of course, a horrible and senseless tragedy. However, any Aggravated Vehicular Homicide necessarily involves the death of a victim. In our view, the fact that these offenses caused death, being a necessary element of the offenses, is not "so great or unusual" that no single prison term for either of the offenses, which were clearly committed as part of a single course of conduct, adequately reflects the seriousness of Hacker's conduct.
The trial court also found that Hacker's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by Hacker. Hacker's prior criminal record consists of the following:
 a February 5, 1998 DUI offense, which was disposed of by Hacker's entering a diversion program;
 a March 23, 1998 Criminal Damaging offense, which resulted in a suspended 30-day jail sentence, a $75 fine, restitution, and Hacker's attending anger management classes; and
 September 24, 1998 offenses of Open Container Violation and Disorderly Conduct, resulting in a $50 fine and court costs on each charge.
We agree with the trial court that Hacker has demonstrated a propensity for getting into trouble as a result of the consumption of alcohol. Hacker is an admitted alcoholic, who, not long after this offense, attended an Intense Outpatient Program, followed by an Early Recovery Program. He completed the first program on June 14, 2000, and the second on September 27, 2000. Besides attending the group sessions as part of these programs, Hacker also attended an average of three NA/AA meetings a week, and individual sessions once every one to two weeks. After Hacker completed the Early Recovery Program, he continued individual sessions until December 6, 2000. The Recovery Counselor, Stephanie Steinbrunner, reported as follows:
 "During the time of treatment at Shelby County Counseling Center Mr. Hacker made some excellent progress in his recovery program. He followed through with recommendations and worked the program as suggested. Mr. Hacker did have some set-backs in his recovery, relapsed once in July, 2000, but he continued to work his program during these times and managed to recover from them. He has changed many areas of his life to help maintain his sobriety, such as social life, ways of coping with stress, and dealing with emotions without the aid of alcohol. At this time, Mr. Hacker has been successfully discharged from his recovery program and his file has been closed. It is recommended that, though he has been discharged, that Mr. Hacker continue attending NA/AA meetings weekly, work with a sponsor, and continue maintaining changes in his life to have a more secure long-term recovery."
From Hacker's remarks at the sentencing hearing, and in the pre-sentence investigation report, he appears to be appropriately contrite and remorseful. Although the issue is close, we find, clearly and convincingly, that the trial court's finding that Hacker's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender is not supported by the record. We conclude that concurrent seven-year sentences will be sufficient. The imposition of a second, consecutive seven-year sentence in this case is not necessary to protect the public, and may be counterproductive with respect to Hacker's rehabilitation when he is eventually released from prison.
Hacker's Third Assignment of Error is sustained.
 IV
Hacker's Third Assignment of Error having been sustained, and his First and Second Assignments of Error having been overruled, the judgment of the trial court is Modified, by making the seven-year sentences imposed for each of Hacker's Aggravated Vehicular Homicide offenses run concurrently, rather than consecutively. As modified, the judgment of the trial court, including, without limitation, the lifetime termination of Hacker's driver's license, is Affirmed.
BROGAN and GRADY, JJ., concur.